**COMMITTEE FOR PUBLIC EDUCA-TION AND RELIGIOUS LIB-ERTY et al., Plaintiffs,**

v.

**Nelson A. ROCKEFELLER, as Governor of the State of New York, Arthur Levitt, as Comptroller of the State of New York, and Ewald B. Nyquist, as Commissioner of Education of the State of New York, Defendants.**

**No. 70 Civ. 3251.**

United States District Court,
S. D. New York.

Jan. 28, 1971.

Leo Pfeffer, New York City, for plaintiffs; Stanley Geller, Paul Hartman, Eugene M. Kaufman, Edward D. Moldover, Burt Neuborne, Joseph B. Robison and Leo Rosen, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for defendants; Jean M. Coon, Asst. Atty. Gen., of counsel.

Davis, Polk & Wardwell, New York City, for intervenor-defendants Cathedral Academy, St. Ambrose School, and Bishop Loughlin Memorial High School; Porter R. Chandler and Richard E. Nolan, New York City, of counsel.

Julius Berman and Marcel Weber, New York City, for intervenor-defendants Bais Yaakov Academy for Girls and Yeshivah Rambam.

LASKER, District Judge.

In 1970, 850,000 students attended nonpublic schools in the State of New York. The New York Legislature, finding by Ch. 138 of the Laws of 1970:

"That the state has a primary responsibility to assure that its precious resource, the young people of the state, receive educational opportunity which will prepare them for the challenges of American life in the last decades of the twentieth century.

"That the state has the duty and authority to provide the means to assure, through examination and inspection, and through other activities, that all of the young people of the state, regardless of the school in which they are enrolled, are attending upon instruction as required by the education law and are maintaining levels of

achievement which will adequately prepare them, within their capabilities.

"That these fundamental objectives are accomplished with respect to public schools in part through the provision by the state of aid to local school districts to meet such costs."

appropriated $28,000,000 to be paid to nonpublic schools "for expenses of services for examination and inspection in connection with administration, grading and the compiling and reporting of the results of tests and examinations, maintenance of records of pupil enrollment and reporting thereon, maintenance of pupil health records, recording of personnel qualifications and characteristics and the preparation and submission to the state of various other reports as provided for or required by law or regulation."

■ This suit challenges the constitutionality of the statute as a violation of the "free exercise" and "establishment" clauses of the First Amendment (as applied by the Fourteenth Amendment).[1] Jurisdiction is alleged under 28 U.S.C. §§ 1331, 2201, 2202, 2281,[2] and 2283. The complaint seeks declaratory and injunctive relief.

Plaintiff "Committee" is an unincorporated association of many constituent agencies [3] carrying on activities in the Southern District of New York, whose members are New York residents, and who "share as common objectives preservation of freedom of religion and the separation of church and state and opposition to the use of public funds for the support of sectarian or religious schools." The individual plaintiffs are New York taxpayers. The defendants, as indicated in the caption of the case, are respectively the Governor, Comptroller, and Commissioner of Education of the State of New York. Intervenor-defendants Cathedral Academy, St. Ambrose School, and Bishop Loughlin Memorial High School are secondary and elementary Roman Catholic schools; intervenor-defendants Bais Yaakov Academy for Girls and Yeshivah Rambam are Jewish elementary schools. All of the intervenors are beneficiaries of the legislation.

1. The complaint also alleges that the statute violates Article 11, Section 3, of the constitution of the State of New York.

2. Although the complaint states: "Jurisdiction in conferred upon this Court pursuant to Title 28, United States Code, Sections * * * 2281, 2283, * * *," these statutes, respectively (1) barring a single judge from declaring a state statute unconstitutional and (2) limiting the power of a United States court to stay proceedings in a state court, are negative in character and do not endow a federal court with jurisdiction. Indeed, since no stay of a state court is asked, the reference to § 2283 appears inappropriate. Although no reference is made to 28 U.S.C. § 1343(3), jurisdiction is provided by that statute, as well as by §§ 2201, 2202 (declaratory relief) and, possibly, by § 1331, specified in the complaint.

3. The agencies include: American Ethical Union; American Jewish Committee, New York Chapter; American Jewish Congress; Americans for Democratic Action; Americans for Public Schools; Association of Reform Rabbis of New York City and Vicinity; B'nai B'rith; Citizens Union of the City of New York; City Club of New York; Council of Churches of the City of New York; Jewish War Veterans, New York Department; National Council of Jewish Women, New York City; National Women's Conference of American Ethical Union; New York Civil Liberties Union; New York Jewish Labor Committee; New York Metropolitan Region, United Synagogue of America; New York State Council of Churches; New York State Council, Union of American Hebrew Congregations; New York State Federation of Reform Synagogues; Public Education Association; State Congress of Parents and Teachers, New York City District; Unitarian Universalist Ministers Association of Metropolitan New York; United Federation of Teachers; United Parents Associations; Women's City Club of New York, and Workmens Circle.

Plaintiffs move for the convening of a three-judge district court pursuant to 28 U.S.C. § 2281.[4]

Defendants move to dismiss the complaint on the grounds (1) that the complaint fails to raise a substantial federal constitutional question; (2) that the statute violates neither the federal nor the state constitution; (3) that there is lack of jurisdiction because the amount in controversy is less than $10,000; and (4) that the complaint raises a question of unconstitutionality under the constitution of the State of New York.

Defendants also move to drop plaintiff Committee as a party plaintiff for lack of standing, and to dismiss as to Governor Rockefeller on the ground that no cause of action is stated upon which relief can be granted against him.

██ I turn first to the substantiality of the federal constitutional question.[5]

## I.

██ The federal constitutional issue presented is whether a state may subsidize the operations of sectarian schools, and, if not, whether the payments made under the provisions of Chapter 138 of the Laws of 1970 constitute such an impermissible subsidy.

Plaintiffs claim that the statute constitutes compulsory taxation in aid of religion in violation of the free exercise clause, that its purpose and primary effect is to advance religion in violation of the establishment clause, and that it gives rise to an excessive governmental involvement in and entanglement with religion.

Defendants argue that neither the purpose nor primary effect of the statute is to aid religion, but rather to support the secular purpose of assuring that children attending nonpublic schools comply with the compulsory attendance laws of the state, that they are receiving an adequate education from qualified teachers, and that they are tested in accordance with state standards of academic achievement. The payment for such allegedly secular services, defendants contend, is not constitutionally forbidden. Finally, defendants point out that, although the nonpublic schools were not, immediately prior to the effective date of the Act, compensated for the services covered by Chapter 138, from 1892 until 1968 some 250 nonpublic schools had been so compensated. Accordingly it is suggested that the termination of payments in 1968, although the state continued to require the performance of the services, was legislation which inhibited religion and thus itself a violation of the establishment clause. Although the merits of the present statute do not in my view depend on the prior history of subsidy (that is to say, if there is a substantial question of the constitutionality of Chapter 138, that question is not disposed of by recitation of a previously unassailed subsidy), defendants' contention that the past removal of a subsidy might be regarded an inhibition of religion seems something of an admission that we are dealing with a religious rather than a secular activity. It is also fair to note that the 1892–1968 history is of little significance or assistance in a constitutional analysis, since prior to the Supreme Court's decision in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (June 10, 1968), no litigant would have had standing to at-

4. No application is made for a temporary restraining order enjoining the operation of the statute pending the convening of the three-judge court or for other relief at this time.

5. As we were recently reminded by Judge Friendly on an application for the convening of a three-judge court, the "issue * * * is not whether [the Act] is unconstitutional but whether plaintiffs' claim of unconstitutionality was unsubstantial 'either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court [the Supreme Court] as to foreclose the subject.' California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938)," Latham v. Tynan, 435 F. 2d 1248, at 1252 (2d Cir., Dec. 16, 1970) (dissenting opinion).

tack the constitutionality of the payments.[6]

The touchstone decisions which guide us in determining the substantiality of the constitutional question at issue are Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L. Ed.2d 1060 (1968), and Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).

In *Everson*, the Court upheld a New Jersey statute which permitted reimbursement to parents for bus fares of children attending both public and parochial schools. While finding the scheme constitutional because it financed the expenses of parents and students, rather than schools, the Court pronounced decisively:

"No tax in any amount, large or small, can be levied to support any religious activities or installations * * *" *Id.*, 330 U.S. at 16, 67 S.Ct. at 511.

On its face this proscription would appear to prohibit the payments authorized by Chapter 138, and the plaintiffs argue that *Everson's* edict is absolute and stands unvitiated. But *Schempp* and *Allen* have refined the test, and, as stated by Judge Coffin for a three-judge court holding unconstitutional a Rhode Island statute which provided for supplements to salaries of parochial school teachers of nonreligious subjects:

"Whatever the continued vitality of the *Everson* test, * * * we are satisfied that it cannot be applied in such a literal manner." DiCenso v. Robinson, '316 F.Supp. 112, 119 (D.R.I. 1970).

*Schempp*, which forbade prayers in public schools, supplemented *Everson* by specifying criteria for the validity of state activity vis-a-vis parochial schools:

"The test may be stated as follows: what are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose *and* a primary effect that neither advances nor inhibits religion." *Id.*, 374 U.S. at 222, 83 S.Ct. at 1571. (Emphasis added.)

This formulation was repeated in haec verba in Board of Education v. Allen, supra, 392 U.S. at 243, 88 S.Ct. 1923, 20 L.Ed.2d 1060, in which the Court upheld a New York statute providing for the lending of text books to parochial school students.

Finally, in Walz v. Tax Commission of New York, supra, 397 U.S. at 669, 90 S. Ct. at 1412, 25 L.Ed.2d 697, upholding New York's tax exemption for property used for religious purposes, Chief Justice Burger, writing for the Court, reiterated the two-pronged standard:

"Each value judgment under the Religion Clauses must * * * turn on whether particular acts in question are intended to establish or interfere with religious beliefs and practices or have the effect of doing so."

It is important to note that the *Walz* formulation, however, while continuing the *Schempp-Allen* standard of "purpose" ("intention" in *Walz*) substitutes for the *Schempp-Allen* measurement of "primary effect" the more general phrase "have the effect of doing so." Judge Coffin has properly observed as to this change (DiCenso v. Robinson, supra, 316 F.Supp. at 120), that

---

6. New York Law does not provide an avenue of relief. Under its decisional law "an unaggrieved citizen-taxpayer * * * lacks standing to challenge a statute's constitutional validity." St. Clair v. Yonkers Raceway, Inc., 13 N.Y.2d 72, 76, 242 N.Y.S.2d 43, 44, 192 N.E.2d 15, 16, 91 L.Ed. 711 (1963); Bull v. Stichman, 298 N.Y. 516, 80 N.E.2d 661; Schieffelin v. Komfort, 212 N.Y. 520, 106 N.E. 675 (1914).

"The Chief Justice's phrasing and application of the effect test, however, mark a significant refinement. Gone are the intimations of *Schempp* that the single predominant effect of a statute may be isolated by a process of deductive reasoning based on principle and precedent. Instead, the Court focuses on whether the statute fosters 'excessive entanglement' between government and religious institutions."

As the Chief Justice put it in *Walz*:

"Obviously a direct money subsidy would be a relationship pregnant with involvement and, as with most governmental grant programs, could encompass sustained and detailed administrative relationships for enforcement of statutory or administrative standards * * *" 397 U.S. at 675, 90 S.Ct. at 1414, 25 L.Ed.2d 697.

We may admit that the statute's purpose is not offensive. The objective of assuring that New York's "precious resource, the young people of the state, receive educational opportunity which will prepare them for the challenges of American life in the last decades of the twentieth century" is beyond question a worthy and legitimate legislative concern. Board of Education v. Allen, supra, 392 U.S. at 245–247, 88 S.Ct. at 1927–1928, 20 L.Ed.2d 1060. But we are commanded by the most recent pronouncement of the Court to look not only to purpose, but also to effect.

The issue, then, is narrowed to whether a substantial question exists that the statute has the effect of violating the fiat of the First Amendment. Surely the cumulative thrust of *Everson*, *Schempp*, *Allen* and *Walz* suggests that the answer is affirmative.

The comments of the *DiCenso* court are apt in this regard. There, as here, it was urged that in judging the effect of the statute attention be restricted to the activity subsidized. Rejecting the contention, the opinion stated:

"Such a narrow perspective, * * *, strikes us as unrealistic when examining direct financial aid to denominational schools. The expenses of a religious institution may be apportioned in a variety of ways among its 'secular' and 'religious' activities. Under intervenors' proposed test, sophisticated bookkeeping could pave the way for almost total subsidy of a religious institution by assigning the bulk of the institution's expenses to 'secular' activities." *Id.*, 316 F.Supp. at 119–120.

Furthermore, a grave question is presented as to whether the statute does not on its face violate the "involvement" standard of *Walz*. The administration of the statute, together with the discretion granted to the Commissioner of Education in that regard, appear to be precisely the type of "direct money subsidy * * * pregnant with involvement" and requiring the "sustained and detailed administrative relationship for enforcement" which *Walz* condemned.

This analysis of *Walz'* impact is supported by the decision of the Court of Appeals for the Sixth Circuit in Protestants and Other Americans United For Separation of Church and State et al. v. United States of America et al., 435 F. 2d 627 (December 16, 1970), in which the court, relying on *Walz,* found that the provisions of Title II of the Elementary and Secondary Education Act of 1965 (20 U.S.C. §§ 21–27) authorizing federal grants for library and instructional materials for use of pupils and teachers in public and private (including parochial) schools presented "substantial questions * * * which require the convening of a three-judge District Court for determination."

At the very least, the issue meets the test of California Water Service Co. v. City of Redding, supra, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323, for the convening of a three-judge court; that is, the question is not obviously unmeritorious, and the previous decisions of the Supreme Court have not been such as to

foreclose the subject.[7] It meets the test, too, of Idlewild Bon Voyage Liquor Corp. v. Epnstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962), in which the Supreme Court instructed that:

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirement of the three-judge statute."

For the reasons stated above a three-judge court should be convened.

## II.

■ We have dealt thus far with the substantiality of the federal constitutional question.[8] We come now to the subordinate questions raised by the defendants.

A. *Standing of Plaintiff "Committee"*

■ Defendants argue that the touchstone of standing under Flast v. Cohen, supra, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, is that the party has "a personal stake in the outcome of the controversy" (at 99, 88 S.Ct. at 1952) and that the dispute touches upon "the legal relations of parties having adverse legal interests" (at 101, 88 S.Ct. at 1953). They contend that we should follow the holding of the three-judge court in Lemon v. Kurtzman, 310 F.Supp. 35 (E.D. Pa.1969), that an organizational plaintiff does not, in circumstances such as exist here, meet these requirements.

*Lemon* was a suit seeking to enjoin the expenditure of state funds for the purchase of secular educational services for nonpublic schools. There, as here, organizational plaintiffs asserted their standing on the ground that they were established for the purpose of maintaining the separation of church and state. In concluding that such plaintiffs had not demonstrated standing to sue, the court observed:

"On the basis of the allegations set forth in the complaint as they pertain to the organizational plaintiffs, we can perceive of no *personal stake* or *adverse legal interests* of these plaintiffs which demonstrate their standing as *parties* to the instant suit. Regardless of the good motives of these organizations, the mere fact that the instant case may result in a decision which may be in accord with or adverse to the respective general purposes of these organizations we believe is insufficient to establish standing to sue as an affected party in in-

---

7. In Protestants and Other Americans United For Separation of Church and State, et al. v. United States of America, et al., supra, the Court of Appeals for the Sixth Circuit specifically held, for example, that the issues before it "were not resolved in *Allen*." The reference to *Allen* alone appears to have been predicated on the facts that it is the last of the *Everson-Schempp-Allen* line of cases and that defendants in *Protestants and Other American United* had placed their principal reliance on *Allen*.

8. Defendants have moved to dismiss both on the grounds of failure to raise a substantial federal question—a proposition rejected by this opinion—and that the statute violates neither the New York nor federal constitutions. However, as indicated in the text, a single judge is neither required nor authorized to determine the constitutional question. Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) ; Stratton v. St. Louis S. W. Ry., 282 U.S. 10, 51 S.Ct. 8, 75 L.Ed. 135 (1930) ; California Water Service Co. v. City of Redding, supra ; and Idlewild Bon Voyage Liquor Corp. v. Epnstein, supra. Indeed, as stated in *Idlewild*, where the applicable criteria are met (i. e., a substantial constitutional question is raised, the complaint formally alleges a basis for equitable relief, and otherwise comes within the requirements of the three-judge statute), it is "impermissible for a single judge to decide the merits of the case, either by granting or by withholding relief." (370 U.S. at 715, 82 S.Ct. at 1296).

terest." *Id.*, 310 F.Supp. at 41. (Emphasis in original.)

Plaintiffs contend at the outset that the joinder of the organizational plaintiff in no way prejudices defendants, since it is represented by the same counsel as the other plaintiffs, and that, to the contrary, had the Committee participated as amicus curiae defendants might have been put to additional effort and expense in replying separately to the Committee's arguments. In this regard they point to the fairly general practice of the courts of allowing an organizational plaintiff to appear as amicus in matters of public interest such as this. However, plaintiffs' major contention on this issue is that the courts have implicitly and explicitly recognized the rights of such organizations to sue in their own names in cases of public importance. They cite such opinions as Flast v. Cohen, supra; Office of Communication of United Church of Christ v. Federal Communications Commission, 123 U.S. App.D.C. 328, 359 F.2d 994 (1966); Citizens Association of Georgetown v. Simonson, 131 U.S.App.D.C. 152, 403 F.2d 175 (1968), and the Supreme Court's most recent pronouncement on the question of standing in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970). In *Data Processing* (which followed by a year the *Lemon* opinion on which defendants rely) the Court quite clearly adopted a broad-gauged approach to the definition of standing. The heart of the Court's analysis (at 153–154, 90 S.Ct. at 830) was stated as follows:

"The 'legal interest' test goes to the merits. The question of standing is different. It concerns, apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus the Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.' 5 U. S.C. § 702 (1964 ed., Supp. IV). That interest, at times, may reflect 'aesthetic, conservational, and recreational' as well as economic values. Scenic Hudson Preservation Conference v. FPC, 2 Cir., 354 F.2d 608, 616; Office of Communication of United Church of Christ [v. FCC,], 123 U.S.App.D.C. 328, 334–340, 359 F.2d 994, 1000–1006. A person or a family may have a spiritual stake in First Amendment values sufficient to give him standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844. We mention these noneconomic values to emphasize that standing may stem from them as well as from the economic injury on which petitioners rely here. Certainly he who is 'likely to be financially' injured, FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 477, 60 S.Ct. 693, at 698, [84 L.Ed. 869,] may be a reliable private attorney general to litigate the issues of the public interest in the present case.

\* \* \* \* \* \*

"Where statutes are concerned, the trend is toward enlargement of the class of people who may protest administrative action. The whole drive for enlarging the category of aggrieved 'persons' is symptomatic of that trend."

Applying the liberal criteria of *Data Processing* to the facts here, it seems evident that the Committee has adequately demonstrated its standing to sue. The interest that it seeks here to protect is at least "arguably within the zone of interests to be protected or regulated by the \* \* \* constitutional guarantee in question." It is fair to add, also, that the retention of the Committee as a plaintiff will in no way prejudice the defendants.

B. *Dismissal as to the Governor*

Defendants contend that the case should be dismissed as to Governor

Rockefeller since he is named solely in his capacity as Governor, but has no function as to Chapter 138 which would authorize granting of relief against him. It is argued that defendant Commissioner of Education is charged with the sole responsibility for administration of the Act, and that he is appointed by the Regents of the University of the State of New York, who are in turn appointed by the Legislature of the State without gubernatorial approval; and, further, that defendant Comptroller is an elected official who has the sole responsibility for payment of moneys upon the direction of the Commissioner. It is concluded that, since the complaint requests only an injunction against payment of funds under Chapter 138, no claim is stated upon which relief can be granted against the Governor.

Plaintiffs concede that the Governor has no specified duties as to Chapter 138, but assert that he has been joined as a defendant because he "initiated the challenged legislation" and is responsible under Article 4, Section 3, of the New York State constitution for the faithful execution of state laws. Acknowledging that the Governor is not a necessary party, plaintiffs urge that he is nevertheless a proper party defendant and that the case should not be dismissed as to him.

Rule 21 of the Federal Rules of Civil Procedure provides in relevant part:

> "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

In the circumstances of this case, it appears that the court's discretion should be exercised to drop Governor Rockefeller as a defendant. Surely the fact that the Governor may have "initiated" the legislation under attack does not justify retaining him as a defendant. The cause of action arises from the existence of the Act, not its pre-enactment history. It is clear that, should the plaintiffs prevail, the full relief they seek can be afforded by the issuance of an injunction against the Commissioner of Education and the State Comptroller, who between them have the sole power and responsibility for the execution of Chapter 138's provisions. In addition, the grant of injunctive relief against the Governor, assuming arguendo it were merited, would apparently be a futility, since it is doubtful whether the Governor could exercise authority over the independent Commissioner and Comptroller in spite of the language of Article 4, Section 3, of the New York constitution.

Finally, it is to be noted that, since full relief, if merited, can be granted against the Commissioner and the Comptroller, plaintiffs are not prejudiced by dismissal as to the Governor.

## C. *The Amount in Controversy*

Although the complaint alleges that the amount in controversy exceeds $10,000, defendants contend that the complaint should be dismissed because it does not further allege that the share of the $28,000,000 appropriation attributable to each plaintiff exceeds $10,000.

This argument is inapposite for several reasons: First, jurisdiction is properly found here under the provisions of 28 U.S.C. § 1343(3),[9] as well as 28 U.S.C. § 2201–2. Second, the teaching of Flast v. Cohen, supra, is that the amount of plaintiffs' tax payments is not relevant when, as there and here, the claim is a challenge to a governmental expenditure alleged to violate the establishment clause. This view of the matter has been taken in DiCenso v. Robinson, supra, and Lemon v. Kurtzman, supra. As the court stated in *DiCenso*, supra, 316 F.Supp. at 114, n. 1:

> "Defendants also filed a motion to dismiss on the grounds that plaintiffs lacked standing. This objection we find to be without merit. The standing of taxpayers to challenge state expenditures which infringe the Establishment Clause has long been settled.

---

9. See footnote 2 above. See, also, DiCenso v. Robinson, supra.

Doremus v. Board of Education, etc., 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). The more recent two step analysis suggested in Association of Data Processing Service Organizations Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), produces the same result. Plaintiffs allege that their tax dollars are being misspent, thus establishing injury in fact. It is also clear that the Establishment Clause was intended to limit the use of public funds in support of religious institutions. Flast v. Cohen, 392 U.S. 83, 103–104, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); see Everson v. Board of Education, 330 U.S. 1, 11–13, 67 S.Ct. 504, 91 L.Ed. 711 (1947). Thus the interest asserted by plaintiffs is within the zone protected by the First Amendment. Accord, Lemon v. Kurtzman, 310 F.Supp. 35 (E.D. Pa.1969), prob. juris. noted, 397 U.S. 1034, 90 S.Ct. 1354, 25 L.Ed.2d 646 (1970)."

Finally, it may be argued that, under the rationale of Hague v. C.I.O., 307 U. S. 496, 527–532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), the jurisdictional amount requirement is not applicable to claims under the First Amendment. While it is true that *Hague* dealt with the First Amendment rights of free speech and freedom of assembly, it may be contended, though it need not be decided, that its principles are pertinent in establishment clause cases.[10]

D. *Threshold New York State Constitutional Question*

Article 11, Chapter 3, of the constitution of the State of New York provides in relevant part that

"Neither the state nor any subdivision thereof shall use * * * any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."

Defendants argue that in the light of this provision, the first issue here to be determined is whether Chapter 138 meets the requirements of the state constitution; and that the determination of that question favorably for the plaintiffs would avoid the necessity of reaching the federal constitutional question. Accordingly it is urged that the case should be dismissed on the grounds that a federal court should not adjudicate the validity of a state statute fairly open to interpretation until the state courts have been afforded a reasonable opportunity to construe the statute where, as here, such a construction might avoid the necessity for federal constitutional adjudication. Reliance for this position is placed solely on Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

There are several forceful answers to defendants' contention:

First, the issues of federal and state constitutionality are of equal importance. It is entirely possible that the statute may be found to meet the provisions of the state constitution, but the federal constitutional question would remain. There is a serious question as to whether plaintiffs should be required to abide litigation through the state courts as to a matter of such moment before being allowed to proceed with their federal constitutional claim. As the Supreme Court stated in Baggett v. Bullitt,

10. The cases upon which defendants rely are not to the contrary. Kavanagh v. Brown, D.C., 206 F.Supp. 479, aff'd, without opinion, 371 U.S. 35, 83 S.Ct. 143, 9 L.Ed.2d 112 (1962), held merely that the case was moot because allegations of monetary jurisdiction had been withdrawn. Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957), was not a First Amendment case; the plaintiff there attacking Maryland's sales and use tax statute. Of course, both of these cases considerably antedate the signal holding of Flast v. Cohen, supra.

377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964):

"We also cannot ignore that abstention operates to require piecemeal adjudication in many courts * * *, thereby delaying ultimate adjudication on the merits for an undue length of time, * * *"

and in Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (January 19, 1971) (its most recent pronouncement on abstention):

"As we said in Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444, abstention should not be ordered merely to await an attempt to vindicate the claim in a state court. Where there is no ambiguity in the state statute, the federal court should not abstain but proceed to decide the federal constitutional claim. Id., at 250–251, 88 S.Ct. at 396–397. We would negate the history of the enlargement of the jurisdiction of the federal district courts, if we held the federal court should stay its hand and not decide the question before the state courts decided it."

Second, though Harrison v. NAACP, supra, held that the state court should be allowed a reasonable opportunity to determine the question of state law there involved, the Supreme Court stressed that the state court in the circumstances of *Harrison* might construe the statute in question not to apply to parties to the case. Such a framework does not exist here. Furthermore, *Harrison* did not hold that the federal district court should dismiss the case, but, rather, that it retain jurisdiction until the state court had had a reasonable opportunity to act. As the Supreme Court observed with regard to the principle of abstention applied there and suggested by the defendants here:

"This principle does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise * * *" *Harrison,* supra, 360 U.S. at 177, 79 S.Ct. at 1030.

And two weeks after its decision in *Harrison,* the Supreme Court stated in NAACP v. Bennett, 360 U.S. 471, 79 S. Ct. 1192, 3 L.Ed.2d 1375 (1959):

"When the validity of a state statute, challenged under the United States Constitution, is properly for adjudication before a United States District Court, reference to the state courts for construction of the statute should not automatically be made."

■ But more important than any of these considerations is the fact that this court ought not here abstain, since under the Law of New York plaintiffs have no standing to litigate the state constitutional question in the New York courts. St. Clair v. Yonkers Raceway, Inc., 13 N.Y.2d 72, 242 N.Y.S.2d 43, 192 N.E.2d 15 (1963); Bull v. Stichman, 273 App.Div. 311, 78 N.Y.S.2d 279, aff'd 298 N.Y. 516, 80 N.E.2d 661 (1948); Schieffelin v. Komfort, 212 N.Y. 520, 106 N.E. 675 (1914). That these decisions, denying a taxpayer standing to challenge the constitutionality of state expenditures, still represent the law of New York is attested to not only by the most recent of the decisions cited immediately above, but also by the fact that the State Legislature, in 1970, passed Assembly Bill 3745A, a precise purpose of which is to amend the New York constitution to allow such taxpayer standing. Under New York constitutional procedure the proposed amendment cannot become effective until repassed by the Legislature and approved by the voters of the state.

Under these circumstances, such holdings as Hillsborough Township Somerset County, New Jersey v. Cromwell, 326 U. S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946), are apposite. The Supreme Court there held it proper for a federal court to rule on the validity of state tax questions since "it is not clear that today respondent has open any adequate remedy in the New Jersey courts for challenging the assessments on local law grounds." (at 628, 66 S.Ct. at 450).

Finally, as the Court of Appeals for this Circuit has observed with regard to the doctrine of abstention in Wright v. McMann, 387 F.2d 519, 524 (1967):

"The latest pronouncement on the subject by the Supreme Court emphasizes that the doctrine is to be applied 'only in narrowly limited "special circumstances."' Zwickler v. Koota, 389 U. S. 241, 88 S.Ct. 391 [19 L.Ed.2d 444] * * *."

\* \* \* \* \* \*

To conclude, the plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. § 2281 is granted. Defendants' motions to dismiss are denied, except that the motion to dismiss as to Governor Rockefeller is granted. Defendants' motion to drop the Committee as a party plaintiff is denied.

It is so ordered.