AMERICAN CIVIL LIBERTIES UNION OF MARYLAND et al.

v.

BOARD OF PUBLIC WORKS OF the STATE OF MARYLAND et al.

Civ. No. 72–307.

United States District Court, D. Maryland.

Dec. 13, 1972.

Lawrence S. Greenwald, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen., Md., George W. Constable, George T. Tyler, John H. Mudd, Baltimore, Md., Paul R. Connolly and Charles H. Wilson, Jr., Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

By Chapter 626, Acts 1971, the Maryland Legislature authorized state aid to nonprofit private colleges and universities within the State of Maryland. Under that law, codified as Article 77A, § 65 et seq. of the Annotated Code of Maryland, aid is given directly to the institution in proportion to the number of associate or bachelors degrees awarded by it in the fiscal year next preceding the fiscal year in which payment is made. Qualifications for the aid are set forth in § 66:

> In order to qualify for State aid apportionments pursuant to this subtitle, any institution of higher education must meet each of the following requirements:
>
> (a) The institution must be a nonprofit private college or university which has been accredited by the State Department of Education;
>
> (b) The institution must have been established in this State prior to July 1, 1970;
>
> (c) The institution must maintain one or more earned degree programs, culminating in an associate of arts or baccalureate degree;
>
> (d) The institution cannot be one awarding only seminarian or theological degrees.

This suit challenges the constitutionality of the statute as a violation of the free exercise and establishment clauses of the First Amendment. Plaintiffs seek preliminary and permanent injunctions to prevent the state from paying aid pursuant to the Act and to enjoin the aid recipients from using funds already received. They also seek a declaration that all funds received by those institutions be paid over to the state with interest, and the convening of a three-judge court. Jurisdiction is claimed under 28 U.S.C. §§ 1331, 1343, 2281 and 2284.

Two of the plaintiffs are organizations, the American Civil Liberties Union of Maryland (ACLU), and Protestants and Other Americans United for Separation of Church and State (POAU). These organizations claim as a common objective the preservation of the doctrine of separation of church and state. The four individual plaintiffs are Maryland taxpayers. Defendants are the Governor, Comptroller and Treasurer of the State of Maryland, all of whom constitute the Board of Public Works of the State of Maryland, and five of the 17 institutions of higher learning which are recipients of aid under the challenged statute.

Defendants have moved to dismiss the action on one or more of the following grounds: (1) failure to state facts supporting the allegation that the statute violates the Free Exercise (of religion) Clause of the First Amendment; (2) lack of standing of the two organization plaintiffs; (3) failure to join "indispensable" parties under Rule 19 of the Federal Rules of Civil Procedure.

None of the parties seriously challenge the Court's power to entertain and pass on the motions without convening the three judge tribunal. As will appear from this opinion, this Court is satisfied that the motions at issue raise questions which are within the purview of the District Judge to whom application for the three judge court was made.

The plaintiffs' three judge court motion is based upon the language of 28 U.S.C. § 2281, providing that an injunction against enforcement of any state statute "shall not be granted except by three judges." Section 2284 provides that the District Judge to whom application for the three judge court is made shall immediately notify the Chief Judge of the Circuit "in any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges." Thus it is this Court's duty to consider and pass on only those motions which address the question of whether the suit is one covered by §

2281. The Supreme Court in Idlewild Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), stressed that the District Judge's inquiry in such a case "is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." 370 U.S., 715, 82 S.Ct. 1296. The Court of Appeals for the Fourth Circuit has recognized that insubstantiality of the claim "may appear because of absence of federal jurisdiction, lack of substantive merit in the constitutional claim, or because injunctive relief is otherwise unavailable." Maryland Citizens for a Representative General Assembly v. Governor, 429 F.2d 606 (1970).

Based on these criteria, the motions here at issue are properly before this Court for reasons that more fully appear below.

## I.

### A. THE FREE EXERCISE VIOLATION

The complaint, at paragraph 10, alleges that the Act is a law respecting an establishment of religion and prohibiting the free exercise thereof. All defendants move to dismiss the contention that the Act violates the free exercise clause, contending that plaintiffs lack standing to maintain the free exercise claim since such a claim is predicated upon coercion, which none of the plaintiffs allege.

■ The lack of substantive merit of plaintiffs' free exercise claim is made apparent from previous decisions of the Supreme Court. A single judge may dismiss the claim on that basis without convening a three judge court. Maryland Citizens for a Representative General Assembly v. Governor, *supra*, 429 F.2d at 611.

■ The case law shows very clearly that one who does not allege a law's coercive effect on his practice of religion has no standing to assert a free exercise violation. The most recent statement of this doctrine is contained in Tilton v. Richardson, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971), where the Supreme Court invalidated the complaint of litigants who were "unable to identify any coercion directed at the practice or exercise of their religious beliefs." p. 689, 91 S.Ct. p. 2101. A brief exploration of the basis of the Court's cryptic statement is in order.

The best exposition of the necessity of alleging coercion to make out a free exercise claim is contained in McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), a case involving the Sunday closing law. Noting that the plaintiffs had not alleged any infringement of their own religious freedoms, the court reasoned that since "the general rule is that 'a litigant may only assert his own constitutional rights or immunities,' . . . we hold that appellants have no standing to raise this contention." p. 429, 81 S.Ct. p. 1107.

In contrast to *McGowan* was the decision in its companion case, Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961). In that case orthodox Jewish merchants claimed that the law's requirement to close on Sundays placed an economic burden on their religious practice of closing on Saturdays. The court applied the purpose and primary effect test (leavened with less drastic means test), concluding that there was no free exercise violation, despite the burden on plaintiffs' adherence to the practice of their religion.

The concrete infringement exemplified in *Braunfeld* was the basis of the parties' standing in that case and was the type of interference with religious practices which the court found lacking in McGowan. The court's recent statement in *Tilton* is traceable directly to the *McGowan* decision. In School District of Abington v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), the court held that prayers in public schools violated the establish-

ment clause and noted that standing to challenge free exercise depends on "proof that particular religious freedoms are infringed," at 224 fn. 9, 83 S.Ct. 1572, citing *McGowan*. *Schempp* in turn was relied on by the court in Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968). In that case the court, relying on *Schempp*, validated a state textbook-loan program, refuting the free exercise contention with the statement that appellants failed to contend that the Act coerced them as individuals in the practice of their religion. Finally, in Tilton v. Richardson, *supra*, the Court relied on *Allen* to deny the free exercise claim on the grounds that no coercive effect on plaintiffs' practice of their religion had been shown.

In *Tilton* the court did not phrase its denial in terms of lack of standing although lack of standing to assert the free exercise claim was the basis for denial of that claim. This is evident from the history of the doctrine relied upon in *Tilton*. And lack of standing of plaintiffs in the instant case, plaintiffs who "have neither alleged nor intend to prove that . . . coercion exists under the statute at issue," (Plaintiffs' Memorandum in Opposition to Motions to Dismiss the Free Exercise Contention) is the basis for granting the motions to dismiss their free exercise contention.

## B. THE ORGANIZATION PLAINTIFFS' LACK OF STANDING

All defendants move to dismiss the complaints of the organization plaintiffs, alleging that the ACLU and the POAU lack standing to assert any of the claims presented.

The question of whether a single judge can consider an issue of standing without convening a three judge court, when there has been a request for such a court, is easily resolved. He can. Standing is an aspect of the constitutional "case or controversy" requirement. Wright, Law of Federal Courts (1970)

p. 39. As such it is clearly a "jurisdictional "case or controversy" requirement. determination on the authority of Maryland Citizens for a Representative General Assembly v. Governor, *supra*. (The Supreme Court referred to standing as a "complicated specialty of federal jurisdiction," in United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 156, 73 S.Ct. 609, 97 L.Ed. 918.) An example of single-judge consideration of standing where a three judge court had been requested is found in Committee for Public Education v. Rockefeller, 322 F.Supp. 678 (S.D.N.Y. 1971), where the Court denied the motion to dismiss for lack of standing without questioning the procedure.

Disposition of this motion is controlled by Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), upon which both defendants and plaintiffs rely. Subsequent lower court decisions have relied on *Flast* for resolution of the issue of standing for organization plaintiffs with varying results. Lemon v. Kurtzman, 310 F.Supp. 35 (E.D.Pa. 1969), rev'd on other grounds, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), dismissed for lack of standing the establishment of religion complaints of the ACLU and the POAU, among others. Committee for Public Education v. Rockefeller, *supra*, considering an identical claim of a group with similar interests to those in *Lemon*, held that the standing requirement had been met.

Although *Flast* involved a taxpayer's suit (challenging aid to church schools) and set forth with precision the requirements of parties seeking standing in similar cases, the Court's analysis is applicable to the issue of standing generally. In terms of constitutional limitation, "the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." 392 U.S. at 101, 88 S.Ct. at 1953. The Court reasoned that standing required only that the party have the "requisite personal stake in the out-

come," 392 U.S. at 101, 88 S.Ct. at 1953, and proceeded to define the circumstances under which a federal taxpayer will be deemed to have that personal stake and interest. The issue would be determined in favor of standing when "there is a logical nexus between the status asserted and the claim sought to be adjudicated." 392 U.S. at 102, 88 S.Ct. at 1953. The Court then held that taxpayers have the requisite personal stake if they can show there is a logical link between their status as taxpayers and the type of law challenged and if they can show a logical link between that status and the constitutional provision they claim the law infringes.

■ Plaintiffs rely on this language to assert that standing depends only on adversariness. They should not ignore, however, the effort the Court expended in determining whether the litigant therein had the "requisite personal stake." There is something more to adversariness than an ad hoc judgment that petitioner will fight a good fight. The ACLU and the POAU depend for standing on their "common objective" to preserve separation of church and state. Complaint, paragraph 4. But a mere interest in the outcome cannot be the personal stake the Court requires if standing is not to be evidenced by the fact of bringing suit—and it is implicit in *Flast* that such is not to be the case. Unless the organizations' "interest" attains some elevated status by the fact that they are organizations with an historic interest in the subject matter of this suit, they lack standing.

The requisites of organization standing were discussed in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), wherein the Court pointedly rejected the contention that organizations with an historic interest in the subject matter, by that fact alone, satisfy the "personal stake" requirements of standing.

Sierra Club, an organization with a long established interest in environmental matters, had challenged Interior De-

partment approval of a ski-resort access through a national forest. The club sued under the Federal Administrative Procedure Act, 5 U.S.C. § 701 et seq., as an organization with a special interest in conservation and sound management of national parks. The Supreme Court noted that Flast v. Cohen is controlling when a party does not rely on a statute. But when, as in *Sierra*, a statute is involved, the standing issue will be determined under the statute (which must, of course, comply with Article III requirements.) The court did not deny that environmental harm is an "injury in fact," but held that it cannot be assumed that *everyone* is injured, and found no showing that plaintiff Sierra Club *itself* was among those injured.

Sierra had relied for standing on its right to assert the public interest. Noting that some courts had accepted this "public action" theory, e. g. Citizens' Committee v. Volpe, 425 F.2d 97 (2nd Cir. 1970), while other courts had found standing in the fact that the organizational plaintiffs had an " 'organizational interest in the problem' of environmental or consumer protection," 405 U.S. at p. 739, 92 S.Ct. at p. 1368, the Court rejected the former (stating that one may assert the public interest *after* one crosses the standing threshold) and distinguished the latter (noting that "in most, if not all of these cases, at least one party to the proceeding did assert an individualized injury either to himself, or, in the case of an organization, to its members." p. 739 fn. 14, 92 S.Ct. p. 1368.)

The court seemingly took pains to note that it was not elucidating *Flast*, but the importance attached to the requirement of an individualized injury is not without persuasive weight. Guided by *Sierra,* an organization's historic interest in the subject matter fails to meet the "personal stake" requirement of *Flast*.

Plaintiffs rely on Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Com-

mittee for Public Education v. Rockefeller, *supra*. *Data Processing*, like *Sierra*, involved statutory review of an administrative agency action. It was held that plaintiff had standing to challenge a ruling by the Comptroller of the Currency which permitted national banks to enter into competition with plaintiff. The court in *Committee for Public Education* relied on *Data Processing* to support standing of the plaintiff, holding that the "liberal criteria" of *Data Processing* justified granting standing since the interest the Committee sought to protect was "arguably within the zone of interests to be protected or regulated by the . . . constitutional guarantee in question." 322 F.Supp. at 685.

But the holding of *Data Processing* does not involve the issue here concerned —whether group interest constitutes the requisite "injury" for standing. *Data Processing* did not broaden the law's conception of "injury in fact" or personal stake. Petitioner's injury in that case was apparent. The liberalization wrought was an easing of the determination of whether a statute contemplates review of an injury of the type petitioner alleges, and thus the case stands for the proposition that one's injury need only be "arguably within" the zone of interests which the statute seeks to protect. Since plaintiff in *Data Processing* had demonstrated an "injury in fact" to it personally, the holding did not, because it could not, relax the requirements that there be such an injury.

*Data Processing*, therefore, does not ease *Flast's* requirement of a "personal stake." It does not contradict the teaching of *Sierra* that on issues of standing, an organization does not make out the required "personal stake" merely by demonstrating an historic interest in the subject matter. American Civil Liberties Union of Maryland and Protestants and Other Americans United for Separation of Church and State lack standing to maintain their suits, and those suits must be dismissed.

## C. FAILURE TO JOIN OTHER PERSONS

Some defendants have moved to dismiss for failure to join all persons necessary for a just adjudication. The persons in question are the twelve institutions of higher learning which receive aid under the Act, but which have not been named as parties defendant.

The threshold issue is whether a single judge, acting alone and without convening a three judge court, can properly consider such a motion.

The motions to dismiss for failure to join other persons are based on the grounds that the relief prayed for, if granted, would harm aid-recipients not named as defendants; and if non-defendants are not included in the decree, that defendants would be deprived of equal protection of the law. The state defendants add that if non-defendants are not included, the state could be subject to the risk of multiple litigation.

■ All arguments presented can be characterized as allegations that the Court will be unable to fashion appropriate relief in this dispute. In *Maryland Citizens for a Representative General Assembly*, the District Court's dismissal of a suit seeking to restrain public officials from conducting certain elections was affirmed. The District Court found that injunctive relief was inappropriate since the elections were too close in time. The suit was dismissed because the court could not fashion relief, a clear precedent for single judge consideration of motions to dismiss for want of necessary persons. Other courts have approved the action of a district judge in granting motions to dismiss for failure to join necessary parties. Sellers v. Regents, 432 F.2d 493 (9th Cir. 1970); Osage Tribe v. Ickes, 45 F.Supp. 179 (D.D.C.1942).

Having determined the motions are properly before the court, it is next necessary to consider the merits of the motions, filed pursuant to Rule 19, Fed-

eral Rules of Civil Procedure. The rule was rewritten in 1966 to provide that a party is "regarded as" indispensable if in equity and good conscience the action should be dismissed in the party's absence.

Rule 19(a) deals with a category of persons who should be joined by court order if they can be. Rule 19(b) governs the determination of whether the suit should be dismissed when a person who falls within 19(a) cannot be joined. Since all of the non-party recipients are amenable to suit in this Court and could be joined in the instant suit, the standards of 19(b) are not applicable. Whether action should be taken to bring the non-defendant aid recipients into the suit depends upon an analysis of the standards of Rule 19(a). What is readily apparent, however, is that the motions to dismiss for failure to join other persons must be denied.

## II.

In determining the relationship of the non-defendant aid recipients to this litigation, the Court must consider the relief requested and the standards of Rule 19(a).

 ██ Plaintiffs contend that the Act should be declared unconstitutional on its face, and that money paid over to recipient institutions should be returned to the state. Rule 19(a)(2) provides that the non-parties should be joined in an action when the decree might be detrimental to them. But the Rule does not require a court to join all persons whose interests might conceivably be affected by the decision in the case. Provident Tradesmen's Bank v. Patterson, 390 U.S. 102, 110, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). The fact that all recipients of aid under a challenged statute have a financial interest in the continuation of that statute does not lead inevitably to a conclusion that all aid recipients *must* be joined as parties. (The non-party aid recipients could move for intervention under Rule 24 if they are concerned that their interests in this case justify the burden that entering into the litigation would place upon them.)

But protection of absent persons is not the only reason joinder might be proper. In addition to cessation of payments under the statute, plaintiffs seek return of moneys already distributed. If the Act is found to be unconstitutional on its face, return of the moneys paid to the defendant institutions would be unjust, without similar direction to the non-parties. Obviously, the non-parties cannot be bound by any decree entered herein. Provident Tradesmen's Bank v. Patterson, *supra*, p. 110, 88 S.Ct. 733. Without joinder of the non-party institutions, the Court cannot grant complete relief. And Rule 19(a)(1) states that an absent person should be joined if, in his absence, "complete relief cannot be accorded." Federal Rules of Civil Procedure, 19(a)(1). Complete relief could be assured if the state were required to bring actions against the non-party institutions for return of the money. But that remedy, involving as it does the necessity for additional litigation on what is essentially one subject matter, contravenes another of the major purposes of the Rule. 28 U.S.C.A., Rules 17 to 33 (Rule 19 note), Notes of Advisory Committee on Rules.

Several defendants would remove this problem by their argument that the Act *cannot* be unconstitutional on its face, and, therefore, the interest of the non-parties cannot possibly be affected by this suit. They reason that only the plaintiffs' allegation that the Act is unconstitutional *on its face* makes joinder of the other institutions necessary, relying on the companion cases of Tilton v. Richardson, *supra* (federal construction grants to private colleges), and Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), (state aid to private elementary and secondary schools). *Tilton* and *Lemon*, when read together, they contend, establish that school aid laws which provide aid to non church-related as well as church-related insti-

tutions can never be unconstitutional on their face.

Those defendants relying upon this reading of the cases, misplace their reliance. *Lemon* involved the state aid programs of both Pennsylvania and Rhode Island. Both programs were held unconstitutional, but neither of the state acts involved limited aid to only church-related non-public schools, although under the Rhode Island program aid formula all of the aid had gone to church-related schools, and in Pennsylvania the Supreme Court noted that church-related private schools had received 96% of the aid. Therefore, the decision in *Lemon* as to the Pennsylvania program, at least, flatly contradicts defendants' statement that "when institutions without church relationships share in the program, . . . there is no basis for invalidating the statute on its face." Defendants Mount St. Marys and Loyola's Memorandum in Opposition to Motion to Dismiss for Failure to Join Indispensable Parties. An aid program similar in important respects to the Pennsylvania program is, after *Lemon,* unconstitutional on its face.

*Tilton* supports the defendants' proposition even less than *Lemon* since part of the aid program involved in *Tilton was* found unconstitutional, even though aid went to non-church related as well as church-related colleges. (The law's requirement that the buildings which the aid financed not be used for sectarian activities extended only 20 years—the Court excised the 20 year limitation.) Thus *Tilton* itself contains an example of a failing in an aid program which extends aid to both church related and non-church related schools that could now be found unconstitutional on its face. Nothing in *Tilton* or *Lemon* automatically forecloses the possibility that the Maryland Act in question might be found unconstitutional on its face. The question of proper joinder in this case cannot be so easily set aside.

Plaintiffs would join the other recipients as class defendants under Rule 23, an approach which seems peculiarly unsuitable here. Since the outcome of the suit as to each defendant could conceivably turn on their degrees of church-relation, no defendant or prospective defendant is a proper representative of the "class."

Individual joinder of the non-party aid recipients, therefore, seems proper in the present posture of the case. But joinder of the twelve additional recipients will render more complex and costly, for the present litigants and the Court, the determination of the merits of this suit. And it will place a heavy financial burden on twelve additional institutions whose financial straits led to the state statute now in question. The Court is hesitant to take that step, since the only reason it is called for is that plaintiffs claim the Act is unconstitutional on its face and request reimbursement by recipients as well as an injunction (a request the Court might refuse even if it found merit to the claim that the Act was unconstitutional on its face).

The Rules Advisory Committee recognizes that issues of joinder need not be decided during the preliminary proceeding of a suit, stating that "the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced." 28 U.S. C.A., Rules 17 to 33 (Rule 19 note), Notes of Advisory Committee on the Rules.

Plaintiffs have requested a three judge court, and deferring the joinder issue might mean that a joinder determination will have to be made by that tribunal, should plaintiffs' request be granted. See Lion Manufacturing v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (1964) holding that the limitations 28 U.S.C. § 2284 places upon a single judge are addressed to the manner in which a three judge court must function once it is convened. But further development of the issues in this case might cause that court, if convened, to conclude

that joinder is not called for. The three judge court might, if convened, even decide to consider the issue of constitutionality only, and, if the statute is found to be unconstitutional, remand to the single judge for consideration of whether the injunction should be accompanied by recoupment of funds paid out. (See Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) for the general proposition that the three judge panel need decide only those issues which the statute confines solely to three judge courts. The requested injunction to the colleges against use of the funds and the requested declaration that funds already received by the colleges be returned, are seemingly not within the three judge statute.) The non-party recipients could conceivably be joined at such a proceeding.

Further speculation on the precise disposition of the joinder issue which might later be made is inappropriate. The likelihood of harm to the absent persons or the risk of multiple litigation are not sufficiently great to call for joinder of the non-party aid recipients at this time. The nondefendant recipients will be advised by informal notice of the pendency of this suit. See 28 U.S.C.A., Rules 17 to 33 (Rule 19 note), Notes of Advisory Committee on Rules.

Therefore, it is this 13th day of December, 1972, by the United States District Court for the District of Maryland,

Ordered:

1. That that part of the complaint which alleges a free exercise violation be, and the same is hereby, dismissed.

2. That the complaints of plaintiffs American Civil Liberties Union of Maryland and Protestants and Other Americans United for Separation of Church and State be, and the same are hereby, dismissed.

3. That the motions to dismiss for failure to join persons needed for a just adjudication be, and the same are hereby, denied.