**MARYLAND CITIZENS FOR A REPRESENTATIVE GENERAL ASSEMBLY et al., Appellants,**

v.

**GOVERNOR OF MARYLAND et al., Appellees.**

**No. 14599.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1970.

Decided July 9, 1970.

Martin H. Freeman, Upper Marlboro, Md., for appellants.

Henry R. Lord, Asst. Atty. Gen., Maryland, and Richard R. Goldberg, Asst. City Solicitor of Baltimore, Md. (Francis B. Burch, Atty. Gen. of Maryland, Robert F. Sweeney, Deputy Atty. Gen. of Maryland, George L. Russell, Jr., City Solicitor of Baltimore, Md., Ambrose T. Hartman, Deputy City Solicitor of Baltimore, Md., and A. Douglas Owens, Asst. City Solicitor of Baltimore, Md., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

This is an appeal from the dismissal by a single federal district judge of a complaint seeking (1) a declaration that the statute apportioning Maryland's General Assembly is unconstitutional, (2) an injunction restraining Maryland's election officials from conducting the 1970 primary and general elections for the General Assembly under that statute, and (3) a directive to Maryland to conduct the 1970 elections in accordance with a new, constitutional reapportionment plan.

The complaint requested the convening of a three-judge district court, pursuant to 28 U.S.C.A. § 2284, to consider the questions presented.

We affirm the District Judge's dismissal of the action without having certified the case for the designation of a statutory three-judge district court.

The current apportionment was established in 1965 by a special session

of the Maryland General Assembly following the Supreme Court's decision in Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595. Under this apportionment, which is based on 1960 census figures, the maximum deviation of persons represented per member of the House of Delegates (highest to lowest) is 1.92 to 1 and the maximum deviation of persons represented per member of the Senate is 1.30 to 1.[1] The 1966 decision of the Maryland Court of Appeals in Hughes v. Maryland Committee for Fair Representation, 241 Md. 471, 217 A.2d 273, cert. den. 384 U.S. 950, 86 S. Ct. 1569, 16 L.Ed.2d 547, sustained the constitutionality of this apportionment.[2]

By its terms the present apportionment was made applicable only to the 1966 and 1970 legislative elections. The 1969 session of the Maryland General Assembly approved for submission to the voters in the November 1970 election an amendment to the state constitution providing for reapportionment following each federal census. Thus, in all likelihood, any reapportionment prior to the 1970 elections would be of an interim nature only, applicable only to them.

It is the plaintiffs' contention that the deviations in population representation under the current apportionment, although not constitutionally impermissible measured by the standards for state legislatures existing at the time Hughes was decided,[3] are presently constitutionally impermissible measured by the standards enunciated in decisions subsequent to Hughes, particularly Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L. Ed.2d 501.[4]

The courts should not consider the merits of that ultimate question without first considering a number of preliminary questions which arise here. The first of these is whether the courts should ever undertake to readjudicate the constitutionality of a reapportionment plan, judicially determined to have been constitutional, before the results of the next federal census are available. If such readjudication were warranted by a revolutionary change in constitutional doctrine, is a narrowing of the range of permissible deviation from ideal and absolute equality, a result Swann arguably may have effected, the kind of change justifying such readjudication? Finally, there is the question of the extent to which consideration may be given, under such circumstances as this case presents, of the impact of readjudication upon the state's body politic.

Whatever merit there may be in the claim that the constitutional standard of Reynolds v. Sims, as applied in Hughes, has been tightened by Swann, the clear unavailability of injunctive relief in this action warranted dismissal of the complaint without a request for the convening of a three-judge court.

1. Plaintiffs, relying on figures compiled by the Maryland Department of Health and Mental Hygiene, allege that the current deviations are actually significantly larger because of population shifts and growth. That fact alone does not, of course, give rise to a constitutional claim. Reynolds v. Sims, 377 U.S. 533, 583, 84 S.Ct. 1362, 12 L.Ed.2d 506.

2. The court found that "the small inequalities in voting strength * * * result from a good-faith attempt to effectuate a rational state policy, * * *" pointing out that the reapportioned districts followed the boundaries of existing political subdivisions. "The following of the existing boundaries, in and of itself, has certain distinct advantages, among them being the handling of voting machinery, its facility in conducting elections, and the less likelihood of any attempt at gerrymandering." 217 A.2d at 280.

3. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, said that any deviation greater than 2 to 1 could not be sustained.

4. In Swann the Supreme Court declared impermissible deviations of 1.41 to 1 and 1.30 to 1 where the state failed to present any acceptable reasons for the population variations between districts. See, also, Toombs v. Fortson, 241 F.Supp. 65, aff'd 384 U.S. 210, 86 S.Ct. 1464, 16 L. Ed.2d 482.

The 1970 Maryland general elections will be held on November 3, 1970,[5] with primary elections to determine the nominees of the major political parties to be held on September 15, 1970.[6] The last day for office seekers to file a certificate of candidacy is July 6, 1970.[7]

The complaint in this action was filed in the District Court of Maryland on April 6, 1970,[8] only thirteen weeks prior to the filing deadline. The defendants filed motions to dismiss, a hearing was held before a single judge district court on April 24, 1970, and the motions were granted on April 28, 1970. On an expedited appeal the case was argued before us on May 7, 1970.

■ If a three-judge court had been convened in this case and decided, after presentation of evidence and argument, that the present apportionment is constitutionally defective, it would have been necessary to develop a reapportionment plan. Normally a proper regard for federal-state relations would have required that the task be left to the state legislature, unless the legislature had had an opportunity to adopt a constitutionally valid reapportionment and had failed to do so. Swann v. Adams, 383 U.S. 210, 87 S.Ct. 569; Chavis v. Whitcomb, 305 F.Supp. 1364. Here we cannot say that the Maryland legislature failed to act in the usual sense. The constitutionality of the present apportionment had been upheld in 1966 by the highest Maryland court in Hughes v. Maryland Committee for Fair Representation, *supra,* and the continued validity of that decision had not been questioned in court prior to the adjournment of the last session of the legislature. The legislature was never aware that anything need be done prior to the 1970 elections. It was aware that reapportionment would be in order once new census figures were available and, consequently, took steps to provide for such reapportionment following the 1970 and subsequent censuses. Maryland cannot be faulted for not undertaking the redistricting which plaintiffs claim must be done before the next elections.

While the Governor of Maryland is empowered to call a special session of the General Assembly at any time,[9] the development of a rational reapportionment plan takes time. If it is not to be unnecessarily disruptive, many political considerations should be acknowledged. These include such things as the undesirability of having electors choose between contending office-seekers with whom the electors have had insufficient opportunity to become acquainted. The most satisfactory solutions are not to be found in the products of slide rules untempered by practical considerations of the needs of constituencies and the effective functioning of political processes. The ultimate answer is not one which predictably may be found in a matter of hours or even of days.

If the court should undertake the development of its own plan, it would not only brush aside important considerations of federalism, but it, too, would enter upon a time-consuming process. If a satisfactory plan is to be developed, the court should take the time to inform itself of those considerations which the General Assembly properly and reasonably would recognize and attribute appropriate weight to them in the plan's formulation.

5. Maryland Constitution, Art. XV, § 7. Various state officials and congressional representatives in addition to members of the General Assembly will be selected at this election.

6. Annotated Code of Maryland, Art. 33, § 5–2(a) (1969 Cum.Supp.)

7. Annotated Code of Maryland, Art. 33, § 4A–3 (1969 Cum.Supp.) Apparently certificates of candidacy may be filed at any time prior to this deadline.

8. Plaintiffs allege that they waited until after the closing of the 1970 session of the General Assembly on April 1 before filing this suit in order to give the Assembly maximum opportunity to reapportion itself.

9. This procedure was followed when the present apportionment statute was enacted in 1965.

Whether the development of a new reapportionment plan was undertaken by the General Assembly or the court, its emergence in final form could not have been expected until close upon the eve of the July 6, 1970 deadline for the filing of candidacies. Such a result would necessarily impose great disruption upon potential candidates, the electorate and the elective process. While such a consequence might be tolerable in certain situations where the state adamantly has refused to comply with clear constitutional mandates and court orders, e. g., Swann v. Adams, 383 U.S. 210, 87 S.Ct. 569, there has been no such recalcitrance in Maryland. Her demonstrated purpose to achieve a constitutional apportionment and, after 1970, to adopt reapportionments decennially, makes her deserving of immunity from such harsh decrees.

Aside from the disruption attributable to the lateness of the hour in which this claim was first asserted, there is large potential for disruption in reapportioning with undue frequency. Maryland reapportioned its legislative districts in 1965 to meet the requirements of Reynolds v. Sims. It must reapportion those districts again when the results of the 1970 census are in hand, as it plans to do. If it is required to adopt another apportionment plan now, good for the 1970 elections only, Maryland will have been required to reapportion itself three times within seven or eight years. Effective representative government requires more stability than that. Reynolds v. Sims, 377 U.S. at 583, 84 S. Ct. 1362.

We find instructive the Supreme Court's recent action in Chavis v. Whitcomb, supra, a case quite similar to the one before us. In Chavis, a three-judge district court held unconstitutional certain of the multi-districting provisions of the Indiana General Assembly apportionment statute. The court, in a July 28, 1969 order, gave the state until October 1, 1969 to reapportion. The state failed to do so, and on December 15, 1969 the court announced its own reapportionment plan to be used in the November 1970 elections. Under the Indiana Election Code declarations of candidacy had to be filed within a 30-day period commencing February 24, 1970, so that the new apportionment was approved a little more than three months before the closing of the filing period. On February 2, 1970, the Supreme Court granted a stay of the District Court's order pending disposition of the appeal. 396 U.S. 1055, 90 S.Ct. 748, 24 L.Ed.2d 757. On February 6, 1970, the Court refused to vacate that stay, with Justice Douglas dissenting on the ground that the effect of the stay was to allow the election to occur under an apportionment which the District Court had found to be unconstitutional. 396 U.S. 1064, 90 S.Ct. 761, 25 L.Ed.2d 82.

We believe that the same considerations which are present in *Chavis* are present in this case, and that here, as in *Chavis,* the federal courts should withhold relief regardless of the merits of the plaintiffs' claim. In *Chavis,* as here, the validity of the plaintiffs' claim for relief turns on legal questions, the answers to which are not clearly or determinatively established.[10] In *Chavis,* as here, reapportionment prior to the 1970 elections would be particularly disruptive of legislative stability and continuity.[11] In *Chavis,* a reapportionment plan was not approved until three months prior to the filing deadline for the 1970 elections. Here a reapportionment plan could not possibly have been approved earlier than a few weeks before the filing deadline.

10. The Supreme Court has never ruled on the constitutionality of multi-districting although the question has been raised before it. *See* Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401; Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376.

11. In *Chavis* the apportionment statute under attack had been adopted in 1965 after earlier apportionments had been found constitutionally impermissible. The Court noted that voluntary reapportionment based on 1970 census figures appeared likely following the 1970 election.

In *Chavis*, where, unlike here, the suit was brought long before the election, the state refused to undertake reapportionment even though there had been a judicial determination that the existing apportionment was invalid and the court had given the state an opportunity to act. Here, as we pointed out above, the state has in no way been recalcitrant in not reapportioning. We can only conclude that if relief was appropriately withheld in *Chavis, a fortiori*, it must be withheld in this case.

The statutory three-judge district court was provided out of concern over the seemliness of a single federal judge enjoining the enforcement of an act of Congress or of a state statute of statewide application[12] and out of realization of the potentiality of great disruption if such an injunction were improvidently issued. The answer appeared to lie in provisions for the judgment of three judges, rather than one, with a right of direct appeal to the Supreme Court. It is only the possibility of the issuance of such an injunction, however, which triggers the extraordinary three-judge statutes. If such relief is not available, the matter is one for disposition by a single district judge with review in the appropriate court of appeals.[13]

■■ If it appears to the single district judge, therefore, that the complaint does not state a substantial claim for injunctive relief, he need not request the convening of a three-judge court.[14] Insubstantiality in the claim may appear because of absence of federal jurisdiction,[15] lack of substantive merit in the constitutional claim,[16] or because injunctive relief is otherwise unavailable.[17] Such insubstantiality may be evident from the frivolous nature of the claim or from previous decisions of the Supreme Court which require an adverse answer.[18] When it thus appears that there is no substantial question for a three-judge court to answer, dismissal of the claim for injunctive relief by the single district judge is consistent with the purpose of the three-judge statutes, and it avoids the waste and delay inherent in a cumbersome procedure.[19]

The Supreme Court's recent action in *Chavis* makes clear the unavailability of injunctive relief here. It established the insubstantiality of the claim and warranted its dismissal by the single district judge without requesting the convening of a three-judge district court.

■■ Nor was there any abuse of discretion in withholding declaratory relief and dismissing the entire complaint. A declaratory judgment is not available as an academic exercise, and the coercive effect of one here would encounter all of the objections to injunctive relief.

We conclude that the single district judge properly dismissed the complaint. The people of Maryland will have an opportunity to ratify the proposed consti-

12. Goldstein v. Cox, 396 U.S. 471, 90 S.Ct. 671, 24 L.Ed.2d 663; Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194.

13. Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865.

14. California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Merced Rosa v. Herrero, 1 Cir., 423 F.2d 591 (1970); Miller v. Smith, E.D.Pa., 236 F.Supp. 927. But *see* Jackson v. Choate, 5 Cir., 404 F.2d 910.

15. *See* Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

16. Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036; Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323.

17. *See* Cameron v. Johnson, 262 F.Supp. 873, aff'd on other grounds, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182; Brooks v. Briley, 274 F.Supp. 538, aff'd on other grounds, 391 U.S. 361, 88 S.Ct. 1671, 20 L.Ed.2d 647.

18. California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865.

19. Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 78 L.Ed. 1318.

**612**

tutional amendment in November 1970. If they do not and if redistricting is not otherwise initiated for the 1974 legislative elections, a new justiciable cause of action may be asserted.

Affirmed.