John Mac GOVERN, Raymond Shamie, Constance Henry, Joseph Malone, Casper Serijan, Alice Serijan, Donna Bowman, Robert Lerner, George Lane, and John T. Delaney

v.

Michael J. CONNOLLY, in his Capacity as Secretary of the Commonwealth of Massachusetts, John A. Brennan, Jr., in his Capacity as Senate Chairman of the Joint Special Committee on Redistricting, James T. Brett, in his Capacity as House Chairman of the Joint Special Committee on Redistricting, and the Joint Special Committee on Redistricting.

Civ. A. No. 86–1075–C.

United States District Court, D. Massachusetts.

June 11, 1986.

Frank L. McNamara Jr., Julia K. O'Neill, Vena, McNamara, Truelove & Lahey, Boston, Mass., for plaintiffs.

Thomas R. Kiley, First Asst. Atty. Gen., Alexander G. Gray, Boston, Mass., for defendants.

Before TORRUELLA, United States Circuit Judge, CAFFREY, Chief United States District Judge, and ZOBEL, United States District Judge.

## OPINION

PER CURIAM.

This action seeks to reapportion the legislative districts of the Commonwealth of Massachusetts before the 1986 primary and general elections. Plaintiffs are ten registered voters who are residents of seven different Massachusetts cities and towns. They have brought this action challenging the legislative plan (the "Plan") now in effect for apportioning statewide senate and representative districts, on the ground that it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by failing to divide the Commonwealth into equally populous legislative districts according to the most recent and most accurate census figures available. Plaintiffs also claim that Article CI of the Articles of Amendment to the Commonwealth's Constitution violates the Equal Protection Clause[1] because it prescribes an unreasonable mechanism for the periodic readjustment of the Commonwealth's legislative districts.

Defendants are Michael J. Connolly, Secretary of the Commonwealth, John A. Brennan, Jr., and James T. Brett, Senate and House Chairmen of the Joint Special Committee on Redistricting, respectively, and the Joint Committee on Redistricting as an entity. They have moved to dismiss the action under Fed.R.Civ.P. Rule 12(b)(1) and (6)[2] on the grounds that plaintiffs' claims are: (1) barred by the Eleventh Amendment so that subject-matter jurisdiction is lacking; (2) "constitutionally insubstantial;" and (3) filed so late that they are either time-barred or precluded by the doctrine of laches.

*Procedural History*

Plaintiffs filed the original complaint in this action on April 3, 1986. On April 9 they filed a motion for a preliminary injunction seeking to postpone the April 29 deadline by which state legislative candidates must file nomination papers, and to compel state officials to draw up, by June 1, 1986, a new legislative apportionment scheme based on 1985 census figures. Plaintiffs filed a motion to convene a three-judge court on April 22, 1986, which was granted. Defendants filed their motion to dismiss on the same day, and on June 3, 1986 this three-judge panel heard argument on defendants' motion to dismiss plaintiffs' complaint.[3]

*The Motion to Dismiss*

Defendants have moved to dismiss the complaint in this action under Rule 12(b)(6), Fed.R.Civ.P., for "failure to state a claim upon which relief can be granted."[4] Con-

---

1. Also of the Federal Constitution.

2. Defendants also moved originally for dismissal by a single judge pursuant to 28 U.S.C.A. § 2284(b)(1) and (3) (West 1978). The convening of a three-judge panel having eliminated that ground for dismissal, we consider only the Rule 12(b) motion.

3. Plaintiffs filed an amended complaint on June 3, which deleted the class action allegations and state law claims contained in the original complaint, leaving only their federal constitutional claims. Defendants' original motion to dismiss encompassed the claims remaining in the amended complaint.

4. As noted, defendants have also moved to dismiss the action under Rule 12(b)(1) on the ground that the Eleventh Amendment bars subject-matter jurisdiction over cases of this sort. This argument cannot be taken seriously. As early as 1962, the Supreme Court could point to an "unbroken line of our precedents" and specific statutory authority to ground subject-matter jurisdiction over constitutional challenges to state districting plans. *Baker v. Carr,* 369 U.S. 186, 201, 82 S.Ct. 691, 701, 7 L.Ed.2d 663 (1962). That "line of precedents" is now considerably enhanced, *see, e.g., Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983); *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Reynolds v. Sims,* 377

struing the complaint in the light most favorable to the plaintiffs and taking its allegations as true, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Carr v. Learner*, 547 F.2d 135, 137 (1st Cir.1976), the facts underlying plaintiffs' claims are the following.

Article CI of the Articles of Amendment to the Constitution of the Commonwealth prescribes the method by which state legislative districts are drawn. The House of Representatives is to consist of one-hundred sixty (160), and the Senate of forty (40), members drawn from a set of representative and senatorial districts, respectively, containing "an equal number of inhabitants, as nearly as possible." Those districts are apportioned on the basis of a state census taken "[i]n the year nineteen hundred and seventy-five and every tenth year thereafter." Article CI provides that legislative districts are to be fixed for "the ten year period beginning with the first Wednesday in the fourth January following the taking of the census."

The representative and senatorial district plans now in effect were drawn in 1977 based on 1975 population figures. The 1985 census, measuring the number of inhabitants in all Massachusetts cities and towns as of January 1, 1985, has been conducted as prescribed by statute. Although the Secretary of the Commonwealth has yet to certify final population figures, plaintiffs allege that nearly all individual cities and towns have by now turned in a certifiable count. Under Article CI, a new apportionment plan based on the 1985 census must be completed by January of the 1988 election year. A federal census was taken in 1980, the results of

which, according to plaintiffs, can be correlated to state legislative districts.[5]

Plaintiffs' amended complaint challenges the Commonwealth's existing districting plan, in five counts, with reference to the three different bodies of census data. Count One claims that the existing apportionment of representative districts is unconstitutional, because when drawn in 1977 based on 1975 figures the plan allowed a maximum population variance of as much as 20 percent between districts and produced actual variances of 19.99 percent.[6] Counts Two and Three allege that existing state representative and senatorial district plans are unconstitutional when measured against available 1985 census figures. Count Two claims that based on 1985 numbers the difference in population between the most and the least populous representative districts is 77.49 percent; and Count Three alleges that for state senatorial districts that variance is 49.72 percent. Counts Four and Five challenge existing districts based on 1980 federal census figures. Count Four alleges a 63.63 percent total population variance among representative districts, and Count Five alleges a 26.18 percent variance among senatorial districts. The claim that these variations are constitutionally unacceptable relies on *Brown v. Thomson*, 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), in which the Supreme Court stated the general rule that an apportionment plan with disparities in population greater than 10 percent "creates a prima facie case of discrimination and therefore must be justified by the state." *Id.* at 842–43, 103 S.Ct. at 2695–96 (citing *Swann v. Adams*, 385 U.S. 440, 444, 87 S.Ct. 569, 572, 17 L.Ed.2d 501 (1967) ).

U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Gray v. Sandis*, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), and still unbroken. Against this wall of authority, defendants' 12(b)(1) assault on this Court's subject-matter jurisdiction is unavailing.

5. Defendants have suggested by affidavit that that assumption is questionable because the block boundaries used for the federal census do not generally coincide with the precinct or ward

boundaries by which state census figures are reported, except for those districts that comprise whole cities or towns. This issue is not material to our decision on the motion to dismiss, and we do not rely on the affidavit in deciding the motion.

6. The complaint itself refers only to the 20 percent variation allowed by the plan, but plaintiffs' memorandum cites the 19.99 percent actual variance as well.

The standard for determining which, if any, of these counts will survive a motion to dismiss is unambiguous. A court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In the context of a challenge to a state districting plan, the query is whether the suit raises a substantial claim. *Simkins v. Gressette,* 495 F.Supp. 1075, 1080 (D.S.C.1980).[7] The test has been aptly framed by the Court of Appeals for the Fourth Circuit:

> Insubstantiality in the claim may appear because of the absence of federal jurisdiction, lack of substantive merit in the constitutional claim, or because injunctive relief is otherwise unavailable. (footnotes omitted.)

*Maryland Citizens for a Representative General Assembly v. Governor of Maryland,* 429 F.2d 606, 611 (4th Cir.1970); *see also, Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962); *Simkins v. Gressette,* at 1080.

■ By this test Counts Two through Five of plaintiffs' complaint may be quickly dispatched. All quarrel in one way or another with the Commonwealth's decennial approach to reapportionment. They run afoul, therefore, of the very law plaintiffs must use to challenge the Commonwealth's districting scheme. As plaintiffs have urged, *Reynolds v. Sims* stands squarely for the proposition that "the Equal Protection Clause requires that seats in both houses of a bicameral state legislature must be apportioned on a population basis." *Id.,* 377 U.S. at 586, 84 S.Ct. at 1394. But *Reynolds* declares with equal force that "legislative reapportionment is primarily a matter of legislative consideration and determination, and that judicial relief be-

comes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Id.* at 586, 84 S.Ct. at 1394. On this ground alone, Counts Two and Three—which seek reapportionment based on the 1985 census—are premature. The Commonwealth cannot be said to have "failed to reapportion ... in a timely manner" based on the 1985 census when that reapportionment is not due to be complete until January of 1988.

■ Counts Two and Three founder not only on a general theory of deference to the legislature, but also, with Counts Four and Five, on *Reynolds'* specific endorsement of decennial reapportionment. In considering problems concerning legislative redistricting, the Supreme Court has read the Equal Protection Clause forcefully, but also practically. The Court in *Reynolds* made plain that the Equal Protection Clause does not require:

> daily, monthly, annual or biennial reapportionment, so long as a state has a reasonably conceived plan for periodic readjustment of legislative representation. While we do not intend to indicate that decennial reapportionment is a constitutional requisite, compliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation.

*Reynolds,* at 583–84, 84 S.Ct. at 1392–93.

Although plaintiffs have gone to great lengths to unearth cases in which courts, for various reasons, have ordered reapportionment after periods of less than ten years, *see, e.g., Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Sixty-Seventh Minnesota State Senate v. Beens,* 406 U.S. 187, 92 S.Ct. 1477, 32 L.Ed.2d 1 (1972); and *Farnum v. Burns,* 548 F.Supp. 769 (D.R.I. 1982), they have failed to uncover any reason that this Court should intrude into a census and

---

**7.** In *Simkins v. Gressette,* the inquiry into the substantiality of plaintiffs' claims was conducted by a single judge in order to determine whether a three-judge panel should be convened. Although we are beyond that point in this case, the test of substantiality is the same.

reapportionment process that is presumably proceeding apace. To force a breathless reapportionment based on 1985 census figures when there is no reason to doubt that that reapportionment will happen, and happen constitutionally, in due course is plainly beyond the reasonable authority of this or any federal court. It would likewise be lawless to compel reapportionment based on the 1980 federal census figures, when they are not an aspect of the Commonwealth's "reasonably conceived"—and therefore presumptively valid—periodic reapportionment plan. *Reynolds*, 377 U.S. at 583, 84 S.Ct. at 1392–93.

Under the circumstances, Counts Two and Three are unripe, Counts Four and Five simply unsound. Together these counts are insubstantial and therefore dismissable, because they lack "substantive merit in the constitutional claim." *Maryland Citizens*, 429 F.2d at 611.

▉ Count One—which attacks the existing representative district plan as invalid when drawn in 1977 based on 1975 figures—is not similarly flawed. Taking as true the allegation that district populations have varied by a maximum of 19.99 percent from the outset of the plan, Count One states a prima facie claim of discrimination. *Brown v. Thomson, supra,* 462 U.S. at 842–43, 103 S.Ct. at 2695–96.

Though substantively viable, Count One founders on the third part of the *Maryland Citizens* test, which declares a claim insubstantial not only when lacking in merit, but also when "injunctive relief is otherwise unavailable." In cases involving unconstitutional malapportionment, courts are to fashion relief according to the "well-known principles of equity." *Reynolds*, 377 U.S. at 585, 84 S.Ct. at 1394; *Roman v. Sincock,* 377 U.S. 695, 711–12, 84 S.Ct. 1449, 1458–59, 12 L.Ed.2d 620 (1964). Those principles may require a court *not* to "interfere with the conduct of rapidly upcoming elections where the election machinery is already in gear," *Farnum v. Burns,* at 774, even though an existing districting scheme has been found invalid. *Roman v. Sincock,* 377 U.S. at 709–12, 84 S.Ct. at

1457–59; *Reynolds*, 377 U.S. at 585–86, 84 S.Ct. at 1393–94. As the Supreme Court put it in *Reynolds*, in awarding or withholding relief, a court should consider "the proximity of a forthcoming election," and the "mechanics and complexities of state election laws," and it should "endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree." 377 U.S. at 585, 84 S.Ct. at 1394.

Like *Simkins v. Gressette* —and unlike *Farnum v. Burns,* in which the election machinery was already stalled—this case presents a "classic instance" for the application of these principles. 495 F.Supp. at 1081. Although their only potentially viable claim challenges a district plan that has been in effect since 1977, plaintiffs waited until less than a month before nominations were due, roughly three months before the primary, and less than eight months before the 1986 general election to bring the present action. To grant the relief sought—namely enjoining defendants or any other state officials from "taking any actions to prepare for or conduct the 1986 state senatorial and representative elections until ... districts have been redrawn...."—would, without doubt, cause enormous disruption to Massachusetts voters, to candidates, and to the electoral process. The filing period would have to be postponed, and then reopened. Candidates who found themselves in new districts would have to start over, losing the benefits of earlier campaigning. And voters, having grown familiar with 1986 contestants, could find themselves confronted with candidates they do not know. As for the electoral process itself, it does not take a fertile imagination to picture the administrative havoc a midstream reapportionment would wreak.

The timing of this action with respect to the normal decennial reapportionment also weighs heavily against granting relief. Even if, as plaintiffs insist, the 1985 census

figures could be made available in relatively short order, it is doubtless not a "forty-eight hour job with a calculator," as plaintiffs' counsel has suggested, to draw a statewide plan based on those figures. Since the 1985 census may not be complete, an injunction at this point could have the ironic effect of forcing a hasty reapportionment based on the already-superseded 1975 state census, or on inapposite federal census figures, because they are, at least, readily available. That solution would not of course obviate the Commonwealth's obligation, under its own constitution, to reapportion based on the 1985 census. Court intervention at this point, then, would not only cause the dislocation that accompanies any reapportionment, it might well cause it twice.

Equity demands that a federal court stay its hand when judicial relief makes no sense. This action, in which the remedy sought would come at great cost and yield results that are at best uncertain and, at worst, perverse, is plainly such a case. When the massive disruption to the political process of the Commonwealth is weighed against the harm to plaintiffs of suffering through one more election based on an allegedly invalid districting scheme, equity requires that we deny relief. Because injunctive relief is unavailable, Count One, like Counts Two through Five, fails the test of substantiality and must therefore be dismissed.

■ There is an independent but related ground for dismissing Count One, namely, laches. Laches is an equitable doctrine consisting of two elements: (1) inexcusable delay by the plaintiff in instituting suit; and (2) prejudice to the defendant caused by that delay. *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040 (3d Cir.1982). Inexcusable delay is clearly present in this case. As noted, plaintiffs' only viable claim challenges a 1977 plan based on 1975 figures. Plaintiffs do not,

and in this panel's opinion could not, argue that figures from the 1975 state census were unavailable to them until April of 1986, when they filed the original complaint in this action.[8] Plaintiff's delay in bringing this action is also plainly prejudicial to defendants, as the foregoing discussion of the potential impact of this action on the Commonwealth's electoral process has demonstrated. Accordingly, since both inexcusable delay in bringing the complaint and resulting prejudice to the defendants are present, Count One is subject to dismissal on the grounds of laches, as well as on general equitable principles.

For the reasons stated, defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., is granted. Judgment will enter dismissing the complaint.

Order Accordingly.

---

8. Indeed, at the hearing before this panel on June 3, the plaintiffs produced an affidavit by Donald E. Buckholtz, an employee of the Massachusetts Taxpayers Foundation, Inc., who stated

that, using figures from the 1980 federal census, he had compiled population statistics for the 160 state representative and 40 state senatorial districts in Massachusetts as early as 1983.