Carlito J. CARDONA, et al., Plaintiffs,

v.

OAKLAND UNIFIED SCHOOL DISTRICT, CALIFORNIA, et al., Defendants.

No. C 91–4121 FMS.

United States District Court, N.D. California.

Feb. 25, 1992.

---

Joaquin G. Avila, Milpitas, Cal., Fred W. Lopez, Oakland, Cal., for plaintiffs.

Indira Talwani, Lowell Finley, Altshuler & Berzon, Lowell Finley, Philip C. Monrad, Remcho Johansen & Purcell, San Francisco, Cal., Dan Siegel, General Counsel, Joyce M. Hicks, Jayne W. Williams, Oakland City Attorney's Office, Oakland, Cal., for defendants.

## ORDER DENYING PRELIMINARY INJUNCTION AND JUDGMENT OF DISMISSAL

FERN M. SMITH, District Judge.

### INTRODUCTION

School Director Districts for the Oakland Unified School District, last redrawn in 1984, are scheduled to be redrawn next year on the basis of the 1990 census. City of Oakland Charter § 203. Elections for four of the seven School Director Districts, however, will take place this year using the current 1984 Districts. Plaintiffs claim that the current districts violate the one person one vote requirement. (Based on the 1990 census, there is an undisputed population variance of 17.8% between the most populated and the least populated School Director Districts.) Plaintiffs accordingly seek a preliminary injunction to compel redistricting this year in time for the June 2, 1992 primary election. Alternatively, they seek an order postponing the election until November 1992 so that redistricting can be carried out in the interim.

For the reasons discussed below, Plaintiffs' motion for a preliminary injunction is DENIED and this action is DISMISSED.[1]

### BACKGROUND

On July 17, 1989, the United States Department of Commerce stipulated that it would conduct a Post Enumeration Survey ("PES") to evaluate the accuracy of the 1990 census. The Secretary of Commerce also agreed to decide by July 15, 1991 whether to order adjustment of the census figures based on the results of the PES. The stipulation was entered into as part of litigation in which several states and cities sought injunctive relief to bar the Department of Commerce from conducting the census without conducting a PES and to

---

1. Pursuant to the parties' Federal Rule of Civil Procedure 65(a)(2) stipulated request for consolidation of the preliminary injunction hearing with trial on the merits, this action is appropriate for final judgment.

require adjustment for the minority undercount. *See City of New York v. United States Dept. of Commerce,* 739 F.Supp. 761 (E.D.N.Y.1990). On April 26, 1991, the City of Oakland, California was granted leave to intervene as a plaintiff in *City of New York.*

On October 17, 1989, the Oakland City Council adopted Resolution No. 66687 CMS, entitled "Resolution Maintaining The Current City Council Boundaries and Directing Staff To Prepare Necessary Legislation For A Proposed City Charter Revision For The June 1990 Ballot To Redraw District Boundaries Beginning 1993 And Every Ten Years Thereafter." At the June 5, 1990 election, Oakland's voters passed Measure F by a vote of 38,131 to 21,705, amending Section 203 of the Oakland City Charter. The ballot label for Measure F stated: "Shall Section 203 of the Charter of the City of Oakland be amended to change the time for redrawing City Council district boundaries from 1984 and every six years thereafter to 1993 and every ten years thereafter?" [2]

In April 1991, the Department of Commerce provided the results of the 1990 census to the City of Oakland. In a letter dated June 5, 1991, Fred W. López, one of Plaintiffs' attorneys, asked the Oakland City Attorney whether Oakland City Charter Section 203 would allow the City Council to form new districts prior to 1993. In a letter dated June 12, 1991, Assistant City Attorney Joyce M. Hicks answered in the negative. The letter noted that "[t]he Oakland City Council does not have the authority to amend the charter, *sua sponte.* A charter amendment can only occur by election upon adoption by a majority vote of the voters in the election." The letter further noted that the Charter had been so amended in 1990 to change from redistricting in 1984 and every six years thereafter to redistricting in 1993 and every ten years thereafter, and continued:

The rationale behind the reapportionment charter amendment was to relate Oakland's reapportionment actions to accurate census figures while allowing for the reapportionment to take place in a non-election year.... The Council kept in mind that the odd number year immediately following the decennial census might be too soon for an accurate count since the census procedures provide for a post enumeration survey and adjustment to the figures....

On November 21, 1991, Plaintiffs filed their Complaint For Injunctive and Declaratory Relief. Defendants, the City of Oakland and the Oakland Unified School District, filed their Answer on December 12, 1991. On February 4, 1992, Plaintiffs filed a Motion for Temporary Restraining Order. The Court construed Plaintiffs' motion for a temporary restraining order as a motion for a preliminary injunction and issued an Order Setting Briefing Schedule and Hearing Date.[3]

February 5, 1992 was also the deadline for a candidate to become a resident of the district in which the candidate would seek election at the June 1992 primary election. The period for filing nomination papers commenced on February 10, 1992 and several candidates have now filed to run in the June primary election and paid a $300 filing fee. The last day to file nomination papers is March 6, 1992. The primary election for City Council and School Director Districts from Districts 1, 3, 5 and 7 is set for June 2, 1992. The run-off election is set for November 3, 1992.

## DISCUSSION

### A. *Preliminary Injunction*

 The standard for granting a preliminary injunction in redistricting cases does not differ from the general preliminary injunction standard. That standard, set forth in *EEOC v. Recruit, U.S.A., Inc.,* 939 F.2d 746, 752 (9th Cir.1991), requires

---

**2.** The City of Oakland Charter requires that the boundaries of the School Director Districts be the same as those for the City of Oakland's seven Council Districts. City of Oakland Charter § 404(a). Measure F therefore affects the

redistricting of both Council Districts and School Director Districts.

**3.** Pursuant to said Order, a hearing was held on February 21, 1992.

that Plaintiffs demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in their favor. Under either test,[4] a court must always consider whether the public interest would be advanced or impaired by issuance of an injunction in any action in which the public interest is affected. *Caribbean Marine Services Co. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988).[5]

### 1. Probability of Success and Irreparable Injury

■ The first prong of this test requires that Plaintiffs establish probability of success on the merits—*i.e.,* that the timetable in the City of Oakland Charter for redistricting in 1993 and every ten years thereafter is unconstitutional in light of present malapportionment.[6] Irreparable injury, the second prong of the test, is generally established where the alleged injury cannot be adequately compensated by monetary damages. *Zepeda v. United States Immigration and Naturalization Service,* 753 F.2d 719, 727 (9th Cir.1983). Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury.

*See Dillard v. Crenshaw County,* 640 F.Supp. 1347, 1363 (M.D.Ala.1986); *see also Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Reynolds v. Sims,* 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506 (1964) (the right to vote is " 'a fundamental political right, because [it] is preservative of all rights' ").[7] Consequently, if Oakland's redistricting timetable is invalid in light of the 1990 census, a preliminary injunction should issue unless public interest demands otherwise.

### a. Likelihood of Success on the Merits

■ The leading case on redistricting of state and local government districts is *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). *Reynolds* established two fundamental principles. First, the Fourteenth Amendment requires "one person one vote" for state elections. State and local legislative districts must not, when drawn, contain major variations between the least and most populated districts.[8] Districts with less than 10 percent

---

**4.** These are not really separate tests, but "the outer reaches 'of a single continuum.' " *Recruit, U.S.A., Inc.,* 939 F.2d at 752 (citations omitted).

**5.** This is particularly true in redistricting cases. Public interest sometimes requires that preliminary injunctions against invalid redistricting plans not be issued when, for example, an upcoming election would be· delayed. *See infra* Section A.2.a.

**6.** The standard for a preliminary injunction does not require a showing that Plaintiffs will in fact succeed in their ultimate claim for relief, but only a likelihood of success. On an application for preliminary injunction, "it is not the Court's duty ... to make final conclusions as to law and facts, but rather to assess the likelihood of plaintiffs' success at trial on the merits." *Taylor v. Haywood County,* 544 F.Supp. 1122, 1135 (W.D.Tenn.1982). Here, however, the parties have made a stipulated request pursuant to Federal Rule of Civil Procedure 65(a)(2) for consolidation of the preliminary injunction hearing with trial on the merits.

**7.** The Fifth Circuit has held that irreparable injury, such as would warrant issuance of a preliminary injunction, is not established mere-

ly upon a showing that the challenged electoral practice results in denial or abridgement of a citizen's right to vote in violation of the Voting Rights Act. *Chisom v. Roemer,* 853 F.2d 1186, 1188–89 (5th Cir.1988). Noting that preliminarily enjoining Louisiana's system of electing state Supreme Court justices would "cast a cloud [of doubt] over the Louisiana Supreme Court" and would be contrary to public interest, the *Chisom* court denied plaintiffs' request on the grounds that they did not establish irreparable injury. *Id.* at 1190–92. The irreparable injury prong of the preliminary injunction standard, however, is separate from the public interest prong. *See id.* at 1188. A more helpful analysis might have been that irreparable injury was established, but that public interest precluded the issuance of a preliminary injunction. *See infra* Section A.2.a.

**8.** Congressional redistricting is held to a much more stringent standard, requiring "absolute population equality," as nearly as possible. *Karcher v. Daggett,* 462 U.S. 725, 732, 103 S.Ct. 2653, 2659, 77 L.Ed.2d 133 (1983). The cases on state-wide redistricting apply to municipal districts. *Board of Estimate v. Morris,* 489 U.S. 688, 692–93, 109 S.Ct. 1433, 1437–38, 103 L.Ed.2d 717 (1989).

maximum variation will not support a prima facie case of denial of equal protection and need not be justified. *Brown v. Thomson,* 462 U.S. 835, 842, 103 S.Ct. 2690, 2696, 77 L.Ed.2d 214 (1983). A prima facie case exists if, when drawn, districts have maximum variation exceeding 10 percent; but such variations are permissible if "based on legitimate considerations incident to the effectuation of a rational state policy." *Mahan v. Howell,* 410 U.S. 315, 325, 93 S.Ct. 979, 985, 35 L.Ed.2d 320 (1973).

*Reynolds* also established a second and equally important principle: legislative bodies need not continually redistrict to satisfy the requirement of one person one vote, but need only establish a "reasonable plan for periodic revision." *Reynolds,* 377 U.S. at 583, 84 S.Ct. at 1392. As the Supreme Court observed,

> Decennial reapportionment appears to be a rational approach to readjustment of legislative representation in order to take into account population shifts and growth.... [C]ompliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation.

*Id.* at 583–84, 84 S.Ct. at 1392–93. Less frequent reapportionment would "assuredly be constitutionally suspect." *Id.*

*Reynolds,* however, does not stand for the proposition that states are "absolutely free ... from having to reapportion more than once in a ten year period." *Farnum v. Burns,* 548 F.Supp. 769, 774 (D.R.I.1982) (three-judge court). Instead, *Reynolds* simply "set[s] a floor below which such frequency may not constitutionally fall." *Garza v. County of Los Angeles,* 918 F.2d 763, 772 (9th Cir.1990). Courts have, under exceptional circumstances, found voting districts invalid between decennial reapportionment and ordered immediate redistricting. *See, e.g., Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971) (invalidating 1965 plan before next decennial redistricting where 1965 plan

found invalid when enacted); *Farnum v. Burns,* 548 F.Supp. at 774–75 (drastic population shifts resulting in maximum population variations of 88 percent merit court interference where election machinery not yet in gear); *Flateau v. Anderson,* 537 F.Supp. 257 (S.D.N.Y.1982) (three-judge court) (court interference merited where more than 10 years between last redistricting and proposed next one was more than 10 years and only reason for state's timetable was "tradition"), *appeal dismissed,* 458 U.S. 1123, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982).

The last redistricting of Oakland's City Council Districts took place in 1984, and said Districts will be redistricted in 1993—within the decennial frequency below which redistricting may not fall. Absent exceptional circumstances, it would be "beyond the authority of this or any federal court" to force a redistricting plan before 1993. *Mac Govern v. Connolly,* 637 F.Supp. 111, 113–14 (D.Mass.1986) (three-judge court) (suing two years before the next scheduled redistricting). Ignoring a federal decennial census for three years, however, constitutes such an exceptional circumstance. "*Reynolds* instituted a requirement of periodic reapportionment based upon *current population data.*" *Garza,* 918 F.2d at 772 (emphasis added). The right to an equal vote and to equal representation is too important to allow a state or city absolute discretion in delaying post-census redistricting.[9] A state's decision to delay redistricting for more than one year after the federal decennial census must be "constitutionally suspect."

To determine whether Oakland's redistricting timetable is "constitutionally infirm" as well, the Court must balance Oakland's interest in delaying redistricting until after the 1992 elections against the interest of Oakland voters whose voting strength stands to be diluted in the 1992 elections. *See Flateau,* 537 F.Supp. at 264–65. Oakland certainly has interests in "the need for stability and continuity in the organization of the legislative system."

---

**9.** Taken to its extreme, absolute discretion in redistricting, as long as done every ten years, could result in states and cities electing to redis-

trict 9 to 10 years after federal decennial census figures are available—*i.e.,* redistricting in 1999 with 1990 census figures.

*Reynolds,* 377 U.S. at 583, 84 S.Ct. at 1393. The reported 17.8% maximum variation is therefore permissible if "based on legitimate considerations incident to the effectuation of a rational state policy," *Mahan,* 410 U.S. at 325, 93 S.Ct. at 985, and if not outweighed by the voters' interest.

Oakland's decision to delay redistricting until 1993 to assure accurate and final census data is a "rational state policy" in view of Oakland's party status in pending 1990 census litigation.[10] In contrast, the significance of the voters' interest, which must be weighed in relation to the severity of the malapportionment, is not sufficiently grave to compel disregarding Oakland's "rational state policy."[11] Oakland's decision to delay redistricting until after the 1992 elections is therefore not constitutionally infirm.[12]

2. **Serious Questions and Relative Harms**

■ The second test for preliminary injunctive relief requires that serious questions be raised by plaintiffs and that the benefits of the requested relief outweigh any possible harm to the state. After the parties' stipulated request to consolidate the preliminary injunction hearing with trial on the merits[13] and this Court's finding that Oakland's decision to redistrict after the 1992 election is not constitutionally infirm, however, an analysis under the serious questions and relative harms test is moot. But even if no consolidation motion was made and serious questions were presented, the benefits of the requested

relief do not outweigh the possible harm Oakland would face.

a. *Public Interest Concerns*

The unique concerns associated with redistricting cases make public interest a critical factor in deciding whether to preliminarily enjoin an existing redistricting plan. The strong public interest in having elections go forward, for example, weighs heavily against an injunction that would delay an upcoming election. Indeed, the Supreme Court has stated that:

> under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles.

*Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964). Courts have not been shy, under similar circumstances, to deny immediate injunctive relief against invalid plans. *See, e.g., Watkins v. Mabus,* 771 F.Supp. 789, 802–804 (S.D.Miss.) (invalid plan allowed on interim basis where court could not institute alternate plan in timely fashion), *aff'd in part and vacated in part on other grounds,* —— U.S. ——, 112 S.Ct. 412, 116

---

**10.** The Court expresses no view as to whether Oakland's scheme to redistrict in 1993 and every 10 years thereafter constitutes a rational state policy for delaying redistricting when the city is not a party to pending census figures litigation.

**11.** The maximum deviation of 17.8% here, is not much greater than that the Supreme Court has found to pass constitutional muster in newly enacted redistricting plans. *See, e.g., Mahan,* 410 U.S. at 329, 93 S.Ct. at 987 (accepting 16.4 maximum deviation); *see also Cohen v. Maloney,* 410 F.Supp. 1147, 1151 (D.Del.1976) (accepting 18.3 maximum deviation).

**12.** Plaintiffs' arguments that Oakland should not be the only jurisdiction in California exempt

from redistricting by the end of 1991 is unpersuasive and unsupported. California has chosen to require redistricting the year after each federal decennial census only for its statewide offices and for general law cities. In contrast, charter cities, such as Oakland, have no such state requirements. *See* Cal.Elec.Code § 35150. Absent such a state timing requirement, Plaintiff's only valid argument is that the current redistricting timetable is constitutionally infirm in view of the 1990 census. As discussed above, that is not this case.

**13.** *See* Fed.R.Civ.P. 65(a)(2).

L.Ed.2d 433 (1991); *In re Pennsylvania Congressional Dists. Reapportionment Cases,* 535 F.Supp. 191, 194 (M.D.Pa.1982) (injunction denied where it would have delayed a primary election less than two months away and resulting in great expense to public, disruption of campaign organization and confusion).[14]

The Oakland election machinery is already in gear for the June 2, 1992 primary election: the deadline for candidates to establish residency in the districts they want to run in has passed, the period for filing nomination papers has begun and several candidates have already filed to run. Even if the Court could now adopt a redistricting plan, the Alameda County Registrar of Voters has informed the Court that it would still be too late to implement new districts in time for the June 2, 1992 primary election. This Court should not impose the significant costs of delaying an election when Plaintiffs, with nearly a year in which to seek a hearing on the merits, have done so only now that the election machinery is in gear. *See Mac Govern v. Connolly,* 637 F.Supp. 111, 116 (D.Mass. 1986).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is hereby DENIED and the action DISMISSED. A judgment of dismissal is hereby ENTERED.

The Clerk shall close the file.

---

**14.** *See also Chisom v. Roemer,* 853 F.2d 1186, 1192 (5th Cir.1988) (denying immediate injunctive relief where impending election would be affected); *Knox v. Milwaukee County Bd. of Elections Comm'rs,* 581 F.Supp. 399, 405 (E.D.Wis.1984) (same); *but see Taylor v. Haywood County,* 544 F.Supp. 1122, 1134–35 (W.D.Tenn.1982) (injunction issued 2 days before election where constitutional voting rights violations where found particularly egregious).